UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dean A. Koch,                                    Case No. 3:18-cv-2287

        Plaintiff,

v.                                               MEMORANDUM OPINION
                                                 AND ORDER

State of Ohio, et al,

        Defendants.

## I.    Introduction

Before me are the motions to dismiss filed by Defendant Randall J. Meyer, the Ohio Inspector General, (Doc. No. 10), and Defendants State of Ohio, Gino Barna, Brian Bury, Gary Manley, James Zehringer, and Scott Zody. (Doc. No. 16). Plaintiff Dean A. Koch filed a response to each of these motions, (Doc. No. 14 & 18), and Defendants replied. (Doc. No. 17 & 19).

## II.    Background

Koch is a commercial fisherman who owns and operates White's Landing Fisheries, Inc., in Erie County, Ohio. (Doc. No. 1 at 4). From 1974 to 2008, Koch served as the President of the Ohio Fish Producers Association, an organization representing commercial fishermen. (*Id.*). Koch claims he and the organization lobbied continuously on behalf of commercial fishermen who use Lake Erie. (*Id.*). Koch further asserts that, in this role, he has long been an outspoken critic of many decisions made by the State of Ohio, through the Ohio Department of Natural Resources ("ODNR") and its Division of Wildlife, concerning commercial fishing rights. (*Id.*). Koch alleges

that, in part because of his criticisms, he has been subjected, by the various defendants, to a coordinated effort to harass him in his business and cause him personal economic hardship, including litigation intended to harm him, as well as the deprivation of his commercial fishing license. (*Id.* at 5).

Koch's claims arise out of many different interactions with the ODNR, including an arrest in 2015 by ODNR officers that led to criminal charges which threatened to deprive him of his commercial fishing license, as well as a series of events that followed an arrest made by department officers in 2014.

While Koch's complaint details incidents dating as far back as the 1980s, the allegations relevant to his claims in the present suit begin with an incident in 2007. Koch claims that in 2007, the ODNR proposed a plan to buy out commercial trap net fishermen, but the plan failed after Koch and the Ohio Fish Producers Association opposed it. (Doc. No. 1 at 6-7). Sometime after this, the ODNR told another commercial fisherman that commercial fishermen would receive an increased quota of yellow perch if they would remove Koch from the presidency of the Ohio Fish Producers Association. (*Id.* at 7). Koch was later voted out of his presidency. (*Id.*).

Koch's complaint with the Inspector General stems from a series of events that followed his 2014 arrest by ODNR officers Brian Bury and Jared Abele. Koch alleges he complained about Bury and Abele to Gino Barna, a supervisor in the ODNR, on July 31, 2014. (Doc. No. 1 at 9). On September 18, 2014, the ODNR informed Koch it had completed its investigation of Bury and found no just cause to discipline him. (*Id.*). Koch requested the investigation be reopened. The ODNR, through its Chief at the time, Scott Zody, responded that Koch's complaints had not been substantiated and the investigation would not be reopened. (*Id.*).

Koch then turned to the Ohio Inspector General for relief, alleging he was the victim of "selective arrest and prosecution" by the ODNR. (*Id.*). On July 15, 2016, Inspector General Meyer

wrote Koch to inform him that the Intake Committee determined there was no just cause for an investigation. (*Id.*). On July 25, 2016, Koch wrote Meyer again, asking him to reconsider the decision, and Meyer responded on October 18, 2016, informing Koch the Intake Committee had once again reviewed Koch's complaint and found no wrongdoing on the part of the agency. (*Id.* at 9-10).

Also included in Koch's complaint are allegations related to an arrest by Bury and a different ODNR officer, Gary Manley, in 2015, for illegally fishing in the western basin of Lake Erie. (Doc. No. 1 at 8). This arrest led to Koch being charged with taking yellow perch from a restricted zone. (*Id.*). Under applicable state law, a conviction for this offense would have led to Koch having his commercial fishing license revoked. Since filing this complaint, Koch was acquitted of those charges following a bench trial. (Doc. No. 14 at 3).

### III. DISCUSSION

#### A. The Eleventh Amendment

Because Koch brings claims against the State of Ohio and several of its officers, I begin the discussion with an analysis of the Eleventh Amendment.

"The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945) (overruled on other grounds by *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002))). "[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (*per curiam*)). The Supreme Court has identified one "important exception" to this rule, which applies to suits challenging a state official's action as unlawful under the federal constitution. *Pennhurst,* 465 U.S. at 102; *Ex Parte Young*, 209 U.S. 123 (1908). Even this exception has been

3

limited, however, and it applies only to claims for prospective relief. *See Edelman v. Jordan*, 415 U.S. 651 (1974).

Koch brings all seven of his causes of action against each of the defendants named in his complaint, I split the analysis here into two sections, first addressing Koch's claims against the State of Ohio, then proceeding to his claims against individual state officers.

1. **State of Ohio**

In his complaint, Koch names as a defendant the State of Ohio, Department of Natural Resources, Division of Wildlife. Relying on the Eleventh Amendment, the State moved to dismiss Koch's claims under Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. No. 16 at 14). "The Eleventh Amendment bars a suit against a state or its agencies in federal court unless the state consents to suit or Congress abrogated states' immunity with respect to certain claims." *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 681 (6th Cir. 2018). Absent any showing of abrogation or waiver, this court lacks subject matter jurisdiction over Koch's claims against the state of Ohio. While Koch names the state itself as the defendant, I note that the Eleventh Amendment's protection extends to the ODNR as well because it is a state agency. *See id.*; *see also Lupo v. Voinovich*, 235 F. Supp. 2d 782, 789 (S.D. Ohio 2002).

2. **Individual State Officers**

As for Koch's claims against the individual state officers, the analysis depends in part on whether the claims are brought under state or federal law.

I begin by addressing Koch's four state law claims: (1) malicious prosecution; (2) civil conspiracy; (3) failure to train; and (4) failure to supervise[1]. As the Supreme Court explained in

---

[1] It is not clear from his complaint whether Koch is bringing his failure to train and failure to supervise claims under federal or state law. But in another filing addressing these claims, Koch states he is invoking the Court's supplemental jurisdiction. (Doc. No. 18 at 12). Koch characterizes these as state law claims in his response to Meyer's motion to dismiss, (Doc. No. 14 at 5), as well as

4

*Pennhurst*, any claims against state officials in their official capacity are barred by the Eleventh Amendment if the relief sought would operate against the sovereign. 465 U.S. at 106. Thus, Koch's claims for injunctive relief, as well as his claims for monetary damages against these individuals in their official capacity, are blocked by the Eleventh Amendment. Koch attempts to invoke the exception to the Eleventh Amendment that the Supreme Court announced in *Ex Parte Young*, (Doc. No. 14 at 5), but *Pennhurst* directly forecloses this argument. In *Pennhurst*, the Court reasoned that because the exception identified in *Ex Parte Young* was premised "on the need to promote the vindication of federal rights," it does not apply to claims under state law. *Pennhurst,* 465 U.S. at 105-06.

Koch can still bring state law claims for monetary damages against these individuals, provided those claims are against them in their individual capacity. Meyer's reliance on *Otte v. Kasich*, 709 F. App'x 779, 783 (6th Cir. 2017), to argue otherwise is misplaced because in *Otte*, the state claims which sought damages from officers were dismissed on state law immunity grounds.[2] *Otte*, 709 F. App'x at 784. In cases where the plaintiff seeks monetary relief from officials in their individual capacity, the claim can go forward as long as the plaintiff has "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials." *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002) (quoting *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). Koch has done so in his complaint, which clearly states that each of the individual defendants is being sued in both their official and individual capacities.

---

his response to the other defendants' motion to dismiss. (Doc. No. 18 at 16). Thus, I will treat Koch's failure to train and failure to supervise claims as claims for violations of Ohio law.

[2] Whether Ohio's immunity rules would still bar Koch from recovering damages from Meyer in his individual capacity is a question I need not decide given that I find Koch fails to state a claim against Meyer.

Koch also brings the following federal claims: (1) First Amendment retaliation; (2) Fourteenth Amendment Due Process; and (3) Conspiracy to violation constitutional rights to free speech and due process. (Doc. No. 14 at 5).

These claims against these defendants in their official capacities, to the extent Koch seeks prospective injunctive relief, are not barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 665-67. Any claims for monetary relief from these defendants in their official capacity are blocked by the Eleventh Amendment just as the state law claims were. This is because when a suit seeks monetary relief from a state official in their official capacity, the state itself is the real party in interest. *See Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998) ("It is well-established that a plaintiff cannot sue a state agency or any of its employees in their official capacities for monetary damages.").

**B. Failure to State a Claim**

With the claims against the State of Ohio removed from consideration by virtue of the Eleventh Amendment, I proceed to Koch's remaining claims against individual officers. Defendants Barna, Bury, Manley, Zehringer, and Zody (hereinafter "ODNR defendants") and Defendant Meyer moved to dismiss the claims against them for failure to state a claim upon which relief can be granted.

In ruling on a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to [the] plaintiff." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

**1. Malicious Prosecution**

Under Ohio law[3], a malicious prosecution claim requires: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 675-76 (6th Cir. 2005) (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)). Because Koch's complaint fails to plead facts which support a plausible inference that the second element is satisfied, both Meyer and the ODNR defendants are entitled to dismissal of Koch's claims for malicious prosecution.

First, it is important to identify precisely the basis for Koch's malicious prosecution claims. This is because, under Ohio law, claims for malicious prosecution accrue on the date the prosecution is terminated and are subject to a one-year statute of limitations. Ohio Rev. Code § 2305.11. Koch's complaint was filed in 2018 and the only prosecution that took place within the requisite time frame is addressed in detail below. The vast majority of the facts Koch pleads in

---

[3] It is not entirely clear from the complaint whether Koch is bringing claims for malicious prosecution under state law or federal law. But, as was the case with his failure to train and failure to supervise claims, his pleadings as a whole demonstrate that his claim is being brought under state law. He invokes this court's supplemental jurisdiction in the complaint, and cites state law in his response to Meyer's motion to dismiss, (Doc. No. 14 at 5), as well his response to the ODNR defendants' motion to dismiss. (Doc. No. 18 at 16). Therefore, I treat this as a claim under state law.

7

support of his malicious prosecution claim concern a 1989 investigation by George Bauer, which Koch claims demonstrates that the Sandusky Office was intentionally "nickel and diming" him to keep him in court. (Doc. No. 1 at 5-6). Any malicious prosecution claim built on what this investigation found would have long since expired. Recognizing this, Koch argues that these facts are included for context, not to serve as the basis for any claim. (Doc. No. 18 at 15).

Instead, Koch's malicious prosecution claim relies on an incident in 2015 where Bury and Manley arrested Koch for fishing in the western basin. (Doc. No. 1 at 8). On November 10, 2015, White's Landing was charged with three violations of Ohio's quota management system for Lake Erie fishery resources. Ohio Rev. Code § 1533.341. Under this system, the harvesting of Lake Erie yellow perch is regulated and allocated by statistical districts called "management units." *State v. Whites Landing Fisheries, LLC*, 91 N.E.3d 315, 317 (Ohio Ct. App. 2017) (citing Ohio Rev. Code § 1533.341 and Ohio Adm. Code 1501:31–3–12(A)). In April 2015, the ODNR notified White's Landing that there would be no yellow perch allocated for commercial fishing in management unit one. *Id.*

Koch initially won dismissal of the claims against him on the grounds that the regulations defining the boundary of management unit one and management unit two were void for vagueness due to their use of the word "northeast." *Whites Landing Fisheries, LLC*, 91 N.E.3d at 318. But the Court of Appeals of Ohio reversed the trial court on this issue and reinstated the charges. *Id.* at 322-23. Koch was ultimately acquitted on the charges in November 2018.

Koch's claim fails because he does not allege any facts to show his prosecution lacked probable cause, something that would require more than showing that he was ultimately acquitted of the charges. *See Beckett v. Ford*, 613 F. Supp. 2d 970, 979-80 (N.D. Ohio 2009). In this context, probable cause is "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious individual in the belief that the person accused is guilty of the

8

offense with which he or she is charged." *Id.* (citing *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008)) (further citations omitted). Koch's only attack on the prosecution focuses on the investigation that led to it, claiming the investigation "was performed after the date he was purported to have been in the Western Basin and did not include consideration of a documented collision with a freighter moving his nets." (Doc. No. 1 at 8). But even if these facts are true, they would not suggest that Bury and Manley lacked probable cause to believe he violated § 1533.341. For example, nothing in Koch's complaint calls into question the fact that he was in the western basin while in possession of yellow perch[4], a fact which by itself establishes probable cause to believe he harvested them from that area.

Koch further argues that statements by defendants[5], in which defendants allegedly admitted their purpose was to take Koch's license, support his malicious prosecution claim. (Doc. No. 18 at 15). But these statements do not impact whether there was probable cause to prosecute in the first place.

Koch's reliance on all the previous charges brought against him and ultimately dismissed, which he argues provide context for understanding his current claim, is similarly unpersuasive. He still fails to show that probable cause was lacking in the prosecution that constitutes the basis of his claim.

---

[4] While Koch only states that he was "purported to have been" in the western basin, he does not allege any facts to suggest he was not actually there. Neither the timing of the investigation, nor the fact that there were some mitigating circumstances contributing to his presence there, call into question the conclusion that seeing a commercial fishermen in possession of yellow perch in an area where commercial fishermen are not permitted to harvest yellow perch constitutes probable cause to believe that fishermen has committed a crime.

[5] Koch does not identify which defendants in particular, though he alleges the statements themselves were made on behalf of defendants through the Attorney General's Office during the course of the prosecution for the 2015 charges.

9

Finally, I note that with the exception of identifying Bury and Manley as the officers that arrested him in 2015, Koch's complaint fails to plead any facts which would tie the remaining defendants to his claim for malicious prosecution. For this alternative reason, defendants Meyer, Zehringer, Zody, and Barna are entitled to dismissal of the claims for malicious prosecution brought against them.

### 2. Deprivation of Constitutional Rights

Koch's second, third, and fourth causes of action allege the defendants deprived him of rights under the federal constitution. Although Koch is not clear on this point, I treat his federal law claims as claims under 42 U.S.C. § 1983.

Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

To state a claim against an individual under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). To meet the second element above, Koch must plead facts which tie the specific individuals he sues to the violations he alleges. *See Gilmore v. Corrections Corp. of America*, 92 F. App'x 188 (6th Cir. 2004) (affirming dismissal of complaint where plaintiff named twenty-two defendants in caption but failed to allege specifically how any of the individuals were involved in the conduct he alleged); *see also Heyerman*, 680 F.3d at 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").

### a. Right to Free Speech

In his second cause of action, "Deprivation of Constitutional Rights: Right to Free Speech," Koch seems to be asserting a First Amendment retaliation claim.

To establish a First Amendment retaliation claim, Koch must demonstrate:

(1) [he] engaged in constitutionally protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [his] protected conduct.

*Paterek v. Vill. Of Armada, Michigan*, 801 F.3d 630, 645 (6th Cir. 2015) (quoting *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).

While it is not entirely clear which allegations Koch asserts constitute a First Amendment violation, I examine his complaint and subsequent pleadings to address each possible avenue of relief Koch could pursue.

I start with Koch's complaint. In the section addressing his First Amendment cause of action[6], Koch appears to base his claim on Meyer's failure to investigate Koch's complaint about his June 2014 arrest by Bury and Abele. If this is indeed the basis for his claim, Koch's claims against Meyer would be dismissed on qualified immunity grounds[7], and his claims against the ODNR

---

[6] In paragraph 67, Koch alleges he has "publicly criticized the procedures or lack thereof concerning the investigation of his arrest and prosecution alleging to Defendant Meyer retribution and selective prosecution in Huron Case No. CRB 1500352ABC, for his previous activities as president of the Ohio Fish Producers Association and as an individual, *which Defendant Meyer terminated on behalf of all Defendants* to intimidate the Plaintiff from further exercise of his right to free speech and, to seek retribution for the exercise of his constitutional right to free speech on October 28, 2018." (Doc. No. 1 at 10) (emphasis added).

[7] Koch has no clearly established right to have the Inspector General investigate his complaint. *See Sizemore v. Hissom*, No. 2:12-cv-1166, 2013 WL 1867044 at *9 (S.D. Ohio May 2, 2013). Koch may have a right not to be retaliated against by Meyer in the form of a refusal to investigate Koch's complaint, but Koch does not allege any facts to show this is the case, and Koch's conclusory allegations on this front will not suffice.

defendants would fail because those individual actors did not cause the deprivation he alleges, Meyer did.

In subsequent pleadings, Koch provides additional theories to support his First Amendment retaliation claim but fails to demonstrate how these theories are supported by sufficient factual allegations in his complaint.

Koch argues defendants violated his First Amendment rights by offering certain benefits to commercial fishermen if they would vote him out of his post as President of the Ohio Fish Producers Association. (Doc. No. 18 at 7-8). While this conduct would likely qualify as the kind of adverse action that would deter a person of ordinary firmness, *see Fritz*, 592 F.3d at 725-26 (finding adverse action prong satisfied where public official indirectly threatened private individual's economic livelihood), Koch cannot rely on this theory because his complaint is devoid of factual allegations tying any particular defendant to this alleged proposal.[8]

Koch further asserts that the ODNR as a whole intentionally retaliated against him in the form of "targeted rules…that removed valuable fishing rights from him," (*Id.* at 7), and by not offering him plea deals to save his license when "[a]ll other fishermen found in[] this position were given plea deals…" (*Id.* at 8). Again, Koch's complaint fails to provide facts tying any individual defendants[9] to these allegations.

Finally, I note that while Koch's response relies largely on case law involving claims for retaliatory prosecution in violation of the First Amendment, Koch's allegations fare no better when examined through that framework. This is because, to state a retaliatory prosecution claim, a

---

[8] While Koch's response to the ODNR defendants' motion to dismiss claims the ODNR acted through Zody and Zehringer, (Doc. No. 18 at 7), this is not enough. Subject to limited exceptions, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), which do not apply here, information found outside the complaint cannot be considered in ruling on a motion to dismiss.

[9] While Koch's allegations might be sufficient to state a claim against the State of Ohio, or against the ODNR, such a claim would be barred by Eleventh Amendment immunity.

plaintiff must, in addition to pleading an absence of probable cause, satisfy the same elements required for a more general First Amendment retaliation claim, which Koch fails to do. *See Hagedorn v. Cattani*, 715 F. App'x 499, 504-05 (6th Cir. 2017). Thus, while Koch alleges he was cited 42 times in 2008, but not convicted on any of these citations, (Doc. No. 1 at 7), those facts, absent allegations linking any of the current defendants to that conduct, are not enough to state a claim for retaliatory prosecution.

### b. Due Process of Law

In his third cause of action, "Deprivation of Due Process of Law," (Doc. No. 1 at 11), Koch asserts that he was deprived of due process because his complaint to Meyer was "terminated. . . with no statement of the procedures utilized, the standard of review used or an opportunity for Plaintiff to be heard in any meaningful way." (Doc. No. 1 at 11). While it is unclear whether Koch means to rely on procedural or substantive due process for his claim, I find his claim fails to plead sufficient facts to support either.

To establish a procedural due process violation, Koch must demonstrate:

> (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford [him] adequate procedural rights before depriving [him] of [his] protected interest.

*Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010). Because Koch fails to plead the deprivation of any interest protected by the Due Process Clause of the Fourteenth Amendment, his claim must fail.

"The list of liberty interests and fundamental rights 'is short, and the Supreme Court has expressed very little interest in expanding it.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 860 (6th Cir. 2012) (quoting *Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir.2000)). In his complaint,

Koch seems to suggest that the interest he was deprived of was an appropriate investigation by the Inspector General's office, but there are two problems with this line of argument.

First, there is no such interest created by state law. Instead, Ohio Revised Code § 121.42, which establishes the powers and duties of the Inspector General under Ohio law, requires only that the Inspector General "[r]eceive complaints" and "determine whether the information contained in those complaints allege facts that give reasonable cause to investigate. . ." Ohio Rev. Code § 121.42(B). The statute does not require the Inspector General to investigate every complaint that the office receives. *See Sizemore v. Hissom*, No. 2:12–cv–1166, 2013 WL 1867044 at *9 (S.D. Ohio May 2, 2013).

Second, to the extent that Koch alleges he has some interest in that discretion being exercised in good faith, his argument fails because the Sixth Circuit has held there is no individual liberty interest in government officials making discretionary decisions free from corruption. *EJS Props., LLC*, 698 F.3d at 860.

Elsewhere in his motion, Koch argues a commercial fisherman's license is a protected property right. (Doc. No. 18 at 9). This may be so, but Koch was not deprived of his commercial fishing license, and therefore he still fails to state a claim for any procedural due process violation related to that license.

To the extent the complaint could be read to asserts substantive due process claims, those claims fail for the same reason. *See Am. Exp. Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011) (requiring plaintiff to "demonstrate a deprivation of a constitutionally protected liberty or property interest in order to establish a due process violation based on discretionary conduct of government officials"); *see also Guertin v. Michigan*, 912 F.3d 907, 922 n. 5 (6th Cir. 2019) (reiterating that deprivation of constitutionally protected liberty or property interest is threshold requirement for a substantive due process claim).

### c. Conspiracy

In his fourth cause of action, Koch seeks to bring a claim for "Conspiracy for Deprivation of Constitutional Rights." (Doc. No. 1 at 11). Given that Koch characterizes this as a claim under federal law, I treat this as a § 1983 conspiracy claim. The following standard governs § 1983 conspiracy claims in the Sixth Circuit:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Koch's § 1983 conspiracy claim fails because he does not allege any facts to show how each of the defendants participated in the various plans that he alleges were concocted to deprive him of his constitutional rights.

In paragraph 75 of his complaint, Koch asserts all of the defendants "agreed and cooperated in the utilization of Plaintiff's arrest and continuing prosecution to deprive him of his commercial fishing license, a recognized property right. . ." (Doc. No. 1 at 12). But this is a legal conclusion, and legal conclusions "masquerading as factual allegations" are not enough. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)). Koch does not allege how or when the defendants came to this alleged agreement. Paragraphs 76 and 77, which use the same "agreed and cooperated" language but refer to different constitutional rights, fail to state a claim for conspiracy in violation of § 1983 for the same reasons.

15

Koch argues his conspiracy claim is supported by the defendants' statements during court proceedings that their purpose was to deprive Koch of his commercial fisherman's license.[10] (Doc. No. 18 at 11). But even aside from the problems with attributing this statement to each individual defendant, this argument fails because the prosecution's intent at that moment does not speak to whether each of these defendants agreed to a single plan to deprive Koch of his constitutional rights before the occurrence of the relevant overt acts he alleges. The argument also overlooks the fact that if Koch was convicted, he would have been subject to revocation of his commercial license under § 1533.641, regardless of whether the prosecution intended such a result or not. Thus, the fact that the prosecution said it intended to deprive Koch of his commercial fishing license—an intent amply demonstrated by the bringing of the charge itself—does not support an inference that the prosecution sought to do so on behalf of some number of state officials who allegedly shared the same conspiratorial objective.

### 3. Civil Conspiracy

To succeed on a civil conspiracy claim under Ohio law, a plaintiff must show: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)). While the "malicious combination" element of this test does not require an express agreement, it does require a common understanding or design between the parties. *Lee*, 692 F.3d at 446. Because Koch fails to allege facts which would support the inference

---

[10] In paragraph 53 of his complaint, Koch alleges: "On the record in case number, CRB 1500352ABC, Huron Municipal Court, Defendants, through counsel of the Attorney General's Office, have stated, this present year, that it is their purpose to take Koch's license." (Doc. No. 1 at 9).

that the defendants, pursuant to a common understanding, worked in concert to achieve their goals, he fails to state a claim for civil conspiracy under Ohio law.

**4. Failure to Supervise & Failure to Train**

While Koch brings these as two separate causes of action in his complaint, his failure to train and failure to supervise claims appear to be very similar variations of what are known as *Monell* claims. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Osberry v. Slusher*, 750 F. App'x 385, 397 (6th Cir. 2018). But, unlike the typical *Monell* claim, which seeks to hold a municipality liable for the acts of its officers, Koch brings these claims against individual officers.[11]

At the outset, I note that Koch does not identify any authority to support the notion that case law developed in the context of *Monell* would apply to a § 1983 action seeking to hold an individual officer liable for their failure to train or supervise a subordinate. In fact, such an approach seems foreclosed by Sixth Circuit precedent:

> Supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Heyerman*, 680 F.3d at 647 (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)). In *Heyerman*, the Sixth Circuit explained that the plaintiff's attempt to hold a supervisory official liable for her alleged failure to adequately supervise subordinates "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Heyerman*, 680 F.3d at 647 (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)). Koch makes the same mistake here by characterizing these as *Monell* claims. And Koch fails to state a claim for supervisory liability because

---

[11] Koch also names the State of Ohio, the ODNR, and the ODNR's Division of Wildlife Resources as defendants in both his sixth and seventh causes of action, but these claims are not discussed in this section because they are barred by Eleventh Amendment immunity.

17

he does not allege facts which show how any individual supervisory defendant directly participated in the actions he alleges ODNR officers took against him.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendant Randall J. Meyer, (Doc. No. 10), and Defendants State of Ohio, Gino Barna, Brian Bury, Gary Manley, James Zehringer, and Scott Zody, (Doc. No. 16), are granted.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge